## Brunswick-Balke-Collender Company et al. v. California Insurance Company

Before McCann, P. J., McKenrick and Griffith, JJ.

*Harold Kaminsky*, for plaintiffs.

*Shettig & Swope*, for defendant.

GRIFFITH, J., December 22, 1948.—This was an action upon a policy of insurance, which insured, among other things, against plaintiffs' "direct loss or damage" caused from "(e) Sprinkler leakage and water damage from inherent causes of any kind whatsoever".

At the trial plaintiffs proved that about the middle of June 1941 a seepage was noticed within the building and was checked. This occurred several times, but was of a minor nature. Plaintiffs' quarters were located in the basement and subbasement of the State Theater Building at 334 Main Street, City of Johnstown. As the seepage became worse, a plumber was called in, and it was discovered that the water contained sewage, and a hole three and a half feet in diameter was dug out into the street, where it was discovered that there was a break in the terra-cotta sewer pipe. The plumber found that "the street had settled and that probably caused the break". The break was at the curb line, although the excavation was continued about four or five feet out into the

cartway. The plumber left a ledge between the curb and the paving to lay a six-inch sewer pipe to take care of any water that would come in due to an ordinary rain, but on July 3, 1941, a "very unusual" rain occurred while the hole from the ditch into the building was still open. As a result of this unusual and unexpected rain the ditch filled up with water and it poured through the hole in the wall of the building, running into plaintiffs' basement at the level of their balcony and then down over the balcony into the subbasement, where it covered the bowling alleys to a depth of 28 inches. The plumber was asked whether he expected anything like the rain that occurred on July 3rd, and he said, "No more than I was expecting the flood in 1936". It is apparently agreed that the rain was of an unusual and unprecedented character. Plaintiffs having stated that the only remaining witnesses were for the purpose of proving the amount of damages, defendant moved for a compulsory nonsuit, which was awarded by the court. The present proceeding is on a motion to take off the compulsory nonsuit.

An examination of the testimony clearly reveals that the cause of plaintiffs' damage was the water from an unusual rainfall entering the building from an excavation made for the purpose of repairing a broken sewer pipe. Even though the testimony had shown that the break in the sewer pipe was caused by an inherent weakness in the pipe (and the testimony indicates that the reverse is true), we are of the opinion that the break in the sewer pipe was the remote and not the proximate cause of plaintiff's damage.

In Gaupin et al. v. Murphy et al., 295 Pa. 214, the court said, page 217:

"A prior and remote cause cannot be made the basis of an action if such remote cause did nothing more than furnish the condition or give rise to the occasion by which the injury was made possible if there intervened

between such prior or remote cause and the injury a distinct, successive, unrelated and efficient cause of the injury: Bruggeman v. City of York, 259 Pa. 94, 97."

Perhaps the best definition of proximate cause is the following: "The proximate cause of an injury is that cause, which, in natural and continuous sequence, unbroken by any efficient intervening cause, produces the injury, and without which the result would not have occurred": 38 Am. Jur. 695, see also Fuller v. Palazzolo, 329 Pa. 93, 108.

The maxim "causa proxima non remota spectatur" applies in insurance cases: Harris v. The York Mutual Insurance Co., 50 Pa. 341; Foster v. Fidelity Fire Insurance Co., 24 Pa. Superior Ct. 585, 588.

This is the rule not only in Pennsylvania, but generally. "The general rule of insurance law is that only the proximate cause of loss, and not the remote cause, is to be regarded in determining whether recovery may be had under a policy of insurance, and that the loss must be proximately caused by a peril insured against": 29 Am. Jur. 689.

In Dunmire v. Fitzgerald, 349 Pa. 511, 513, the court said:

"Whether such a warranty existed and, if so, whether it was breached, are of no importance from a legal standpoint because the stalling of the hearse had no causal relationship to the accident but merely furnished the condition or gave rise to the occasion by which it was made possible."

So in the present case whether the breakage of the sewer pipe was caused by an inherent defect in the pipe itself instead of by the settling of the street, as the testimony would indicate was the cause, is of no importance, because the breakage of the pipe had no causal relationship to plaintiffs' damage but merely gave rise to the occasion by which it was made possible. While the breakage of the pipe necessitated the punching of the hole in the basement wall and the excavation

of a trench out into the street, this, in our opinion, was merely the condition which made possible the operation of the proximate cause, viz., the unusual rain storm which came along at a time when the ditch was opened.

Being of the opinion that the clause in the insurance policy covering "direct loss or damage" from "sprinkler leakage and water damage from inherent causes of any kind whatsoever" did not cover the loss which occurred in this case, we are bound to enter an appropriate

### Decree

And now December 22, 1948, after argument and upon due consideration, plaintiffs' motion to take off the compulsory nonsuit heretofore entered is denied.