## Maternia, Appellant, v. Pennsylvania Railroad Company.

Argued December 3, 1947. Before MAXEY, C. J., STERN, PATTERSON and JONES, JJ.

*Henry P. Carr,* for appellant.

*Theodore Voorhees,* with him *Barnes, Dechert, Price, Smith & Clark,* for appellee.

OPINION BY MR. CHIEF JUSTICE MAXEY, January 5, 1948:

This is an appeal from an order entering judgment n. o. v. for defendant.

Plaintiff, a longshoreman employed by Dugan & Mc-Namara Company, recovered a verdict for $2,800 for personal injuries sustained on December 8, 1944, at 8:30 P. M. while unloading from a gondola "knocked down railroad equipment", consisting of very heavy wheels, trucks, floors and sides of railroad cars which were being shipped to France for the Army of Occupation. The car, which was being unloaded at Pier 100, South Wharves, Philadelphia, was one of several belonging to defendant company and was on tracks operated by defendant company.

While plaintiff and Harry Stillman were standing on top of some cases of cargo at one end of the car, they received a signal to alight because of an impending switching movement. The warning required all men stationed on freight cars to get off immediately and seek a place of safety. Plaintiff, who was not near enough to the ladder to climb off the piled cases and descend the side of the car, jumped from the top of the crates to the floor of the car. In doing so one foot went through a hole in the bottom of the car which was twenty to twenty-five inches in diameter, with allegedly "jagged edges of rotten wood." Plaintiff delayed reporting the accident to

his employer until six months after its occurrence and first gave notice to defendant company upon filing suit, approximately eleven months later.

The car in which the accident occurred was one of five on the pier. It was received by defendant at Kearney's Junction, New Jersey, on December 4th and was brought by the defendant to the pier for unloading. The shipment in none of the cars originated on defendant's railroad line.

Plaintiff alleges that defendant's failure to inspect the car before placing it on the pier is prima facie proof of negligence. Defendant in disclaiming liability, contends that since the shipment of each car originated on the line of another railroad company and the cars were already loaded with heavy equipment when received by it, a reasonable inspection of the loaded cars would have failed to disclose the hole in the bottom of any of them. It also contends that inspections on Pier 100 were made by its employees only when specially requested by the consignee and were normally limited to the condition of the lading or the safety appliances. No such request was made by the consignee of the cars in question.

Appellant contends that, "A reasonable inspection of the car beforehand would have included an examination of the under structure, the flooring and bracing, and certainly would have disclosed a hole of the dimensions and character described." We cannot agree that any such exacting duty was imposed on the defendant as is thus set forth. All the five cars on the pier contained large crates filled with heavy railroad equipment. If we assume that the hole was in the bottom of the car when it arrived on the pier "an examination of the under structure, the flooring and bracing" which would have revealed the hole's existence would have had to be of such a minute and painstaking character as to exceed the limits of what is ordinarily considered "reasonable inspection". Defendant's failure to make the painstaking examination plaintiff specifies cannot reasonably be ad-

judged to amount to such want of care under the circumstances as to constitute negligence.

In *The Phil. & Read. R. Co. v. J. A. Hughes,* 119 Pa. 301, 312, 13 A. 286, this court said that: "It was the duty of the company to exercise ordinary care in adopting, providing and maintaining safe cars, with suitable appliances and machinery, with which the plaintiff might transact the business of the company within the line of his duty; not the very best machinery which could be procured, or that which combined the latest device or improvement, as a precaution against danger, but such as was reasonably safe, and in common use."

In other words, the standard of care in such cases is ordinary care, or such care as is commonly used.

In *Collins v. Chartiers V. Gas Co.,* 131 Pa. 143, 159, 18 A. 1012, Justice Mitchell, speaking for this Court, said: "On the question of negligence, the question of knowledge is always important, and may be conclusive. Hence the practical inquiry is, first, whether the damage was necessary and unavoidable; secondly, if not, was it sufficiently obvious to have been foreseen, and also preventable by reasonable care and expenditure?"

In *Dominices v. Monongahela Connecting Railroad Company,* 328 Pa. 203, 206, 195 A. 747, this Court, in an opinion by Mr. Justice Stern, said: "In Pennsylvania, as in other jurisdictions, it is settled that a railroad company, before hauling freight cars over its lines, must subject them to an inspection sufficiently thorough to ascertain whether there is any fairly obvious defect in their construction or state of repair which constitutes a likely source of danger."

In applying this test to the instant case, there was in the car in question no "fairly obvious defect". In the car's "state of repair" or disrepair there was nothing which constituted "a likely source of danger". If the hole was in the car when it arrived for unloading and if the hole could then have been detected by a reasonable inspection, the likelihood or chance of such a combina-

tion of circumstances as in this case resulted in an accident might be stated as about one in a thousand. A hole in the bottom of a car which is heavily loaded with bulky material is of no such manifest danger to a person about to unload the car as to require the immediate repair of the hole before the unloading takes place. Even if the hole had been discovered it would probably have been necessary in order to do a good repair job to have the car unloaded before the repairs could be undertaken. We do not find in this case any such want of reasonable inspection as would impute negligence to the defendant.

In *Fredericks v. Atlantic Refining Co.*, 282 Pa. 8, 13, 127 A. 615, this court, in an opinion by Justice KEPHART, said: "Negligence is absence or want of care under the circumstances. A higher degree of care is required in dealing with a dangerous agency than in the ordinary affairs of life or business, which involve little or no risk. No absolute standard can be fixed by law, but every reasonable precaution suggested by experience and the known danger ought to be taken: Koelsch v. The Philadelphia Company, 152 Pa. 355, 362."

In *Canadian Northern R. Co. v. Senske,* 201 Fed. 637, 644, 120 CCA 65, it was stated that: "The best test of actionable negligence and the true standard for the measurement of ordinary care is the degree of care which persons of ordinary intelligence and prudence, engaged in the same kind of business, commonly exercise under like circumstances. If the care exercised in the case rises to or above that standard, there is no actionable negligence. If it falls below that standard, there is."

In *Phippin v. Missouri Pac. R. Co.,* 93 S. W. 410, 413, 196 Mo. 321, the Supreme Court of Missouri said: " 'Reasonable care and diligence' means such care and diligence as an ordinarily prudent and careful man would usually exercise under the same or similar circumstances."

The accident which happened to the plaintiff was not a reasonably foreseeable result of the hole in the car.

In Restatement of the Law of Torts, Volume II, Section 291, appears the following: "(1) Where an act is one which a reasonable man would recognize as involving a risk of harm to another, the risk is unreasonable and the act is negligent if the risk is of such magnitude as to outweigh what the law regards as the utility of the act or of the particular manner in which it is done."

And in Section 293 appears the following statement: "In determining the magnitude of the risk for the purpose of determining whether the actor is negligent, the following factors are important:

"(a) . . . (b) the extent of the chance that the actor's conduct will cause an invasion of any interest of the other or of one of a class of which the other is a member; . . ."

In *Bernhardt v. West Penn. R. R.,* 159 Pa. 360, 28 A. 140, this Court held that negligence could not be predicated upon the failure to remove an obstruction from a railroad station platform when such an obstruction was *not* one which would be "likely to cause injury", saying that to predicate negligence from the failure to remove such an obstruction "would be to exact a degree of care from the appellee much beyond any recognized standard".

So in the instant case to predicate negligence on the defendant's failure to discover the hole in the bottom of the car loaded with heavy equipment and before the car was unloaded (even assuming that the hole was there when the car arrived at the pier) would be to exact a degree of care beyond any reasonable standard required by law.

In deciding this case Judge FINLETTER cited the case of *Semensky v. Pa. R. R. Co.,* 156 Pa. Superior Ct. 555, 41 A. 2d 217, in which an accident was due to the fact that the brakes on a car which was on a railroad siding leading to the yard of a scrap metal dealer did not work when the latter's employee attempted by applying the brakes to stop the car as it went down an incline toward

a street. In affirming the entry of judgment for defendant n. o. v. the Superior Court said: "There is no testimony, however, to show that the defect existed at the time the car was turned over to Bailis by defendant, and since the car was in Bailis' yard for one or two days before it was loaded the mechanical breakdown may have occurred after delivery. More important, there was nothing to show the nature of the defect, and whether it could have been discovered by a reasonable inspection of the car."

Judgment affirmed.