## Commonwealth v. Kohute

*Edward M. Bell,* District Attorney, for Commonwealth.

*John Regule,* for defendant.

ACKER, J., March 13, 1969—The matter for determination arises from a motion to quash the indictment and to suppress results of blood tests and/or any statement made by defendant.

### FINDINGS OF FACT

1. No statement was made by defendant to any police officer.

2. On September 22, 1968, defendant was involved in a violent one car accident resulting in his motor vehicle turning on its top with substantial physical damage and some personal injuries sustained by the defendant himself.

3. The Hickory police arrived at the scene at approximately 1:50 a. m., shortly afterwards, and defendant was removed from the wreck and from the scene by Barris Ambulance employes.

4. The police did not notice any odor of alcohol on defendant at the scene.

5. The police left the scene and arrived at Sharon General Hospital between 3 and 3:30 a. m. on the morning of September 22, 1968.

6. They found defendant lying in a prone position in the emergency room of the Sharon General Hospital. They noted an odor of alcohol on his breath, his eyes were slightly watered, and they had a slightly red cast. They could not detect by his speech at this time any evidence of intoxication.

7. They retired from the emergency room and talked to Dr. Jack Reed, an attending physician at Sharon General Hospital, concerning the possibility of taking blood from defendant for the purpose of analyzing it to be used at a subsequent prosecution for driving under the influence of intoxicating liquors.

8. They were out of the room for approximately five minutes. When they returned to defendant in the emergency room, defendant was then read his constitutional rights from a card prepared by the district attorney of Mercer County, which this court finds to be in conformity with the requirement of the "Miranda" warning.

9. Officer Robert Kamensky informed defendant that he would be charged with driving while under the influence of intoxicating liquors.[1]

10. That the officers obtained a consent form and found defendant in a ward 15 or 20 minutes later,

---

[1] On cross examination counsel for defendant assumed that defendant had in fact been put under arrest. In his leading questions on several occasions he assumed this conclusion to which the officer affirmed. It is not found that defendant was in fact formally placed under arrest because the officers testified that they felt that they could not arrest defendant due to his physical condition at that time and remove him for a hearing.

now being between 4 and 4:30 a. m. on September 22, 1968. That Officer Robert Kamensky read to the defendant the form in its total and asked him to read it back to them; that he read about half of the form out loud and then seemed to mumble to himself as he was reading the balance; and that he willingly signed the consent form for the removal of blood.

11. That the defendant was in a proper physical and mental condition to comprehend the nature of the consent which he was signing, and that he did so of his own free will.

12. That the blood was in fact removed only after the consent form was obtained.

13. That the defendant intelligently consented to and did execute a consent to the withdrawal of blood for the purpose of determining whether he was under the influence of intoxicating liquor.

14. That the Act no. 237 of July 31, 1968, section 1, 75 PS §624.1, setting forth the procedure to be followed in the taking of a blood test, did not become effective until October 1, 1968, and that, therefore, the contentions raised by the defendant's motion that the test was taken in violation of the said statute are without merit.[2]

An examination of the testimony in this case fails to disclose any basis for a motion to quash the indictment and, in fact, the prayer for relief at the conclusion of the defendant's motion makes no mention of a request to quash the indictment. Therefore, it is taken that the caption of the pleadings in this respect is a misnomer.

Blood could be taken from a defendant as of Sep-

---

[2] By the Act no. 17 of June 1, 1967, section 1, 46 PS §504, it is provided that if an act is passed finally after the first day of July of the year of the regular session, or after the date specified in the law the same shall become effective sixty days after final enactment.

tember 22, 1968, upon two conditions. First, if defendant was properly under arrest by the authority of Schmerber v. State of California, 384 U. S. 757, 86 S. Ct. 1826 (1966), or secondly, if defendant gave lawful consent.

It is recognized in Schmerber v. California, supra, at page 770:

"We are told that the percentage of alcohol in the blood begins to diminish shortly after drinking stops, as the body functions to eliminate it from the system. Particularly in a case such as this, where time had to be taken to bring the accused to a hospital and to investigate the scene of the accident, there was no time to seek out a magistrate or secure a warrant."

As in the Schmerber case, we are satisfied that the police officers may not have had sufficient time to secure a search warrant. Whether too great a period of time elapsed between the accident and the taking of the blood will be determined at the time of trial.[3]

However, it is to be noted that the police officers must have in fact placed defendant under arrest and had reasonable grounds to do so.[4]

In the instant case the only evidence of intoxication was that there had been a rather violent accident and that defendant had an odor of alcohol on his breath. It is recognized that the mere involvement in an accident cannot be regarded as evidence of negligence.[5] Therefore, it is difficult to conceive of it be-

---

[3] As noted in Commonwealth v. James M. Kelly, March Sessions, 1968, no. 86, in the Court of Quarter Sessions of Mercer County, Pa., "What time elapsed between the accident and the policemen's arrival, the drinking, if any, and the accident, the drive to the Greenville Hospital and the removal of the blood are all unstated critical facts in determing the use of this blood test."

[4] See Commonwealth v. William C. Wulfert, in the Court of Common Pleas of Mercer County, Pennsylvania, Criminal, No. 13, March Sessions, 1969.

[5] Gift v. Palmer, 392 Pa. 628 (1968).

ing "reasonable grounds to believe"[6] that defendant was driving while under the influence of intoxicating liquors.

However, in this case there is a valid consent intelligently made after adequate warnings. Therefore, we conclude that the motion to suppress the blood tests and the results thereof must be denied.

### Order

And now, March 13th, 1969, the motion to suppress the blood tests and the results obtained thereof is denied.

---

[6] This language is used by the Act of July 28, 1961, P. L. 918, section 1, 75 PS §626, as required before a police officer may administer a chemical breath test or require a physician to do so. Although apparently not required of a blood test, it is indicative of the legislative intent to protect the defendant from an unfounded charge.